IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LIONEL HANSON,

    Petitioner,                   No. CIV S-05-0284 LKK EFB P

    vs.

SCOTT KERNAN,

    Respondent.               FINDINGS & RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a 2001 judgment of conviction entered against him in the Sacramento Superior Court on charges of one count of attempted murder (Cal. Penal Code § 187(a)), and one count of assault with a firearm (Cal. Penal Code § 245(a)(2)).[1] Petitioner seeks relief on the grounds that the evidence introduced at his trial was insufficient to support the jury's true finding on a criminal street gang sentencing enhancement. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

---

[1] Petitioner was also convicted of false impersonation (Cal. Penal Code § 592.3) and resisting arrest (Cal. Penal Code § 148(a)(1)). However, the claim raised in the instant petition does not impact those convictions.

1

I.  **Procedural and Factual Background**[2]

> A jury convicted defendant Lionel Hanson of attempted murder (Pen. Code, §§ 664, 187-count I),[3] assault with a firearm (§ 245, subd. (a)(2)-count II), false personation (§ 529, subd. 3-count IV), and resisting arrest (§ 148, subd. (a)(1)-count V). As to count I, the jury also found that defendant personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and as to count II, that he used a firearm (§ 12022.5, subd. (a)(1)) and inflicted great bodily injury (§ 12022.7, subd. (a)). Finally, the jury found as to counts I and II that they were committed in furtherance of a street gang (§ 186.22, subd. (b)(1)).[4]
>
> Sentenced to state prison for 25 years to life plus a determinate term of nine years, defendant appeals contending (1) the evidence is insufficient to support the gang enhancement . . .
>
> FACTS[5]
>
> On July 20, 1999, after purchasing items at a convenience store, 13-year-old Jasmine A. and some of her friends were returning to their neighborhood when they walked by defendant and another male. Defendant was a Nogales Gangster Crip and was wearing blue; Jasmine was wearing a red scarf, the color of a rival gang. Defendant called out to Jasmine's group, asking if they had any "weed." Someone said no and the group continued to walk, but Jasmine and her cousin, Coffee, lagged behind.
>
> Jasmine overheard defendant ask who she was and told Coffee not to tell him. Defendant said, "Fuck you, bitch," but Jasmine did not respond. Jasmine walked a little further and defendant said, "[C]uz, cuz, your mama a bitch." Jasmine responded with something like, "My mama ain't no bitch. Your mama is a bitch. No your mama is a bitch."
>
> Jasmine and Coffee ran and defendant gave chase, catching up with Jasmine as she neared an alley. Jasmine turned around and defendant struck her on the nose with a gun, causing her to fall.

---

[2] The following summary is drawn from the November 13, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pp. 1-4, filed in this court on July 5, 2005, as Exhibit B to the Answer.

[3] Hereafter undesignated section references are to the Penal Code.

[4] The jury acquitted defendant of count III, assault with a firearm (§ 245, subd. (a)(2)).

[5] Aside from defendant's request that we order the abstract of judgment amended, his only challenges relate to counts I and II; hence, we do not set forth the facts relating to the remaining counts.

Defendant shot Jasmine in the face, neck and shoulder. Jasmine managed to run away and was taken to a hospital. The wounds were through-and-through, causing six holes in Jasmine, all of which were life threatening.

Detective Adlert Robinson, an expert in gang activity, testified that defendant was a member of the Nogales Gangster Crips, a street gang located in North Sacramento. Robinson opined that the shooting of Jasmine was gang-related because defendant yelled "Crip, Crip, Crip" during the shooting; he asked Jasmine if she was a "slob," a derogatory term for a "Blood" gang member; he used the word "cuz," another word showing gang affiliation; he was dressed in blue, the color claimed by the Nogales Gangster Crips; and he had been disrespected by Jasmine in front of his companion, an action which, pursuant to gang tradition, required retaliation.

For the purpose of establishing the street gang enhancement, Detective Robinson testified to two other incidents by the Nogales Gangster Crips. Kenny Hill, another Nogales Gangster Crip, had a child by a woman with whom he had broken up. One day in August 1996, when visiting the woman, Hill heard the child call the mother's new boyfriend, one Orlandis Murray, "daddy." This upset Hill and resulted in his having an argument with Murray. Hill left but returned later with a friend and assaulted Murray, biting off his eyebrow. As defendant and his friend left, they threw gang hand signs and announced that they were Nogales Gangster Crips. Robinson opined that because defendant had been disrespected the assault was done to benefit the gang.

Detective Robinson also described an incident in 1999 when Matthew Castillo, Shaunte Murphy, and Lemont West, all Nogales Gangster Crips, shot Merten Larsen in the head while he stood in his home. The shooting was in response to Larsen's having called the police on the gang because they were dealing drugs outside his home. Robinson opined this shooting was for the benefit of the gang.

Petitioner filed a timely appeal of his judgment of conviction in the California Court of Appeal for the Third Appellate District. Answer, Ex. A. That appeal was denied in a reasoned opinion dated November 13, 2003. Answer, Ex. B. On December 29, 2003, petitioner filed a petition for review in the California Supreme Court. Answer, Ex. C. The petition for review was denied on February 18, 2004. Pet., Ex. B. Petitioner subsequently filed a petition for writ of certiorari in the California Supreme Court, which was denied by order dated October 18, 2004. Pet., Ex. C.

3

## II. Analysis

### A. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a

4

decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

### B. Petitioner's Claim of Insufficient Evidence

Petitioner claims that his right to due process was violated because the evidence introduced at his trial was insufficient to support the street gang enhancement. Specifically, he contends the jury may have improperly relied on an invalid predicate offense in finding that the gang enhancement had been proved. Pet. at 5D.

#### 1. <u>Opinion of the California Court of Appeal</u>

The California Court of Appeal rejected petitioner's sufficiency of the evidence claim, reasoning as follows:

> Defendant contends that the gang enhancement imposed on counts I and II pursuant to section 186.22, subdivision (b)(1) must be stricken for insufficiency of the evidence. We disagree.
>
> Section 186.22, subdivision (b)(1)[6] provides for enhanced punishment of one, two, or three years for ". . . any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members. . . ."
>
> A "criminal street gang" is defined as "any ongoing organization, association, or group of three or more persons . . . having as one of its primary activities the commission of one or more [specified criminal acts] . . . and whose members individually or collectively engage in or have engaged in pattern of criminal gang activity." (§ 186.22, subd. (f).)
>
> A "'pattern of criminal gang activity' means the commission of, attempted commission of, . . . or conviction of two or more of the following [specified] offenses, provided at least one of these offenses occurred after the effective date of this chapter (September 26, 1988) and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . ."

---

[6] All references to section 186.22 are to the statute as it read in July 1999, the time of the commission of the offenses herein.

5

(§ 186.22, subd. (e).) The charged offense can be considered for the purpose of establishing the pattern of gang activity (*People v. Gardeley* (1996) 14 Cal.4th 605, 621-624); however, no offense occurring after the commission of the charged offense may be used for that purpose (*People v. Godinez* (1993) 17 Cal.App.4th 1363, 1369-1370).

Although only two predicate offenses were required to establish the pattern of criminal gang activity, the People offered three such offenses – defendant's assault on Jasmine on July 20, 1999; Kenny Hill's assault on Orlandis Murray in August 1996; and the gang assault on Merten Larsen by the three Nogales Gangster Crips in 1999. However, the People failed to present any evidence as to the date in 1999 when the assault on Larsen occurred, an omission which rendered it impossible for the jury to determine whether the Larsen assault occurred before or after the assault on Jasmine.[7] Consequently, the evidence was insufficient to support use of the Larsen assault as a predicate offense for establishment of the pattern of criminal gang activity.

However, because only two predicate offenses are required to prove a pattern of criminal gang activity, the unavailability of the Larsen assault as a predicate offense would have no effect on the jury's finding a pattern of criminal gang activity if it can be determined that the jury also found that defendant's assault on Jasmine and Hill's assault on Murray in August 1996 were qualifying predicate offenses.

Defendant claims that no such determination can be made on this record because (1) the court committed an instructional error which made it likely that the jury used the Larsen assault as a predicate offense, and (2) it is unlikely that the jury used the Murray assault because its use was "hotly contested." We agree with defendant as to the first prong of his argument but not the second.

The instructional error committed by the court was its failure to inform the jury that for a non-charged offense to qualify as a predicate offense in determining whether a pattern of criminal gang activity had been established, the non-charged offense must have occurred prior to the charged offense. (*People v. Godinez, supra*, 17 Cal.App.4th at pp. 1369-1370.) This omission permitted the jury to find that the Larsen assault qualified as a predicate offense notwithstanding the People's failure to present evidence showing that the Larsen assault occurred prior to the charged

---

[7] During argument to the jury, the prosecutor stated that the assault on Larsen occurred in February 1999. However, the jury was instructed that "Statements made by the attorneys during a trial are not evidence."

6

assault on Jasmine. Moreover, we agree with defendant that the jury likely found the Larsen assault to be a qualifying offense because it was

clearly a gang-related shooting and the defense did not contest its use.

As to the likelihood that the jury found the charged offense qualified as a predicate offense, defendant concedes that such was the case because the jury convicted him of the assault on Jasmine and found the assault was committed for the benefit of a street gang. We agree.

However, defendant argues, Hill's assault on Murray presents a different matter because its applicability for use as a predicate offense was "hotly contested", with his counsel arguing "that the gang enhancement was not applicable to this case because the Kenny Hill incident was about a guy acting crazy, not about activity done for the benefit of a street gang." Thus, believing it had the two required qualifying predicate offenses, namely, the charged offense and the Larsen assault, the jury may well have concluded they need make no finding on Hill's assault on Murray.

While it is true that defendant "hotly contested" the Murray assault, he did so on an utterly immaterial point, to wit, whether Hill's assault on Murray was gang-related. Non-charged offenses offered to prove a pattern of criminal street gang activity need not be gang-related – all that is required to establish the pattern is that the gang "has as a primary function the commission of specified criminal acts and whose members have actually committed specified crimes, and who acted with the specific intent to do so." (*People v. Gardeley, supra*, 14 Cal.4th at p. 624, fn. 10.) In other words, for purposes of proving the pattern of criminal gang activity it mattered not whether Hill's assault on Murray had anything whatsoever to do with his street gang.

Moreover, the evidence that Hill assaulted Murray in August 1996 was overwhelming. In addition to Detective Robinson's testimony that Hill was a known member of the Nogales Gangster Crips and his relating Hill's assault on Murray in August 1996, wherein Hill bit off Murray's eyebrow, the court admitted into evidence a certified copy of Hill's conviction for mayhem (§ 203), which was based upon that assault. Nothing in the court's instructions suggested or required that to qualify as a predicate offense that a non-charged crime be gang-related.[8] Given the presumption that

---

[8] The court instructed the jury in this regard as follows: "The term 'criminal street gang' means any ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of criminal acts, having a

7

the jury followed the court's instructions (*People v. Harris* (1994) 9 Cal .4th 407, 426), there is no basis for believing that the jury was misled on the irrelevant point that Hill's assault on Murray did not qualify as a predicate offense because it was not gang-related.

We think it clear on this record that the jury found that the assaults on Jasmine, Murray and Larsen each qualified as a predicate offense for establishing a pattern of criminal gang activity. Because the assaults on Jasmine and Murray were sufficient to establish the pattern of criminal gang activity and because the instructional error related only to the Larsen assault, the instructional error was harmless beyond a reasonable doubt. (*See People v. Flood* (1998) 18 Cal.4th 470, 502-503 [instructional error that improperly describes or omits element of offense subject to review pursuant to *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

The People set forth the following claims as to why the jury could properly find the Larsen assault was a predicate offense. The People argue that "since the statutory elements of the gang enhancement with regard to the Merton Larsen attack were proven to the jury despite the ambiguity in the date [of its occurrence], the burden is upon appellant to show that it occurred after his offense in order for him to demonstrate a denial of due process." The argument is, at best, unsound. The assault on Jasmine occurred on July 20, 1999. The Larsen assault also occurred in 1999, but the People failed to present any evidence regarding when in 1999 the Larsen assault occurred. This failure rendered it impossible for the jury to determine whether the Larsen assault occurred before or after the assault on Jasmine. Thus there was no ambiguity in the evidence on this point, only an evidentiary failure. And defendant's burden, which he met, was simply to show that evidentiary failure.

////

---

common name or common identifying symbol, and whose members individually or collectively engage or have engaged in a pattern of criminal gang activity. [¶] The terms 'criminal act' and 'pattern of criminal gang activity' are synonymous as used in this instruction. [¶] Those terms are defined as the commission or attempted commission of or convictions for at least two of the following offenses, provided that at least one offense occurred after 1988: [¶] The offenses are within three years of each other. [¶] That the offenses were committed on separate occasions or by two or more persons. [¶] A pattern can be established by two or more incidents, each with a single perpetrator, or by a single incident with multiple participants committing one or more of the specific offenses listed below. [¶] The current offense charging the defendant with attempted murder can be used to establish a pattern of criminal gang activity. Most of those offenses are, [¶] 1. Assault with a deadly weapon or by means of force likely to produce great bodily injury; [¶] 2. Robbery; [¶] 3. Homicide; [¶] 4. Shooting at an inhabited dwelling house; [¶] 5. Arson; [¶] 6. Burglary; [¶] 7. Kidnapping; [¶] 8. Mayhem; [¶] 9. Torture."

> The People claim "there was no error in the instructions . . . ." It couldn't be much plainer – as pointed out above, the court's failure to instruct the jury in accordance with *People v. Godinez, supra*, 17 Cal.App.4th 1363, was instructional error. (*See People v. Flood, supra*, 18 Cal.4th at pp. 502-503 [failure to include element of offense is instructional error].)
>
> The People state that they "do[ ] not concede that the record establishes that the Larsen attempted murder happened after the charged crime." The point is irrelevant. Defendant is not asserting that the Larsen assault occurred after the charged crime. He is asserting that the evidence is insufficient to show that the Larsen offense occurred prior to the charged crime.
>
> Finally, the People claim that even if the Larsen assault occurred after the charged crime, this resulted only in the admission of irrelevant evidence and defendant's failure to object "waived consideration of the error on appeal." Defendant is not objecting to the admission of the evidence relating to the Larsen assault, as such evidence was clearly relevant to establish the pattern of criminal gang activity. Instead, defendant is claiming there was not enough evidence adduced to use the Larsen assault as a predicate offense. Thus defendant is making an insufficiency of the evidence argument, an argument which requires no specific objection in the trial court. (*See People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469; *People v. Neal* (1993) 19 Cal.App.4th 1114, 1122 .)

Opinion at 4-11.

### 2. **Applicable Law**

The question before this court is whether the state court's conclusion that sufficient evidence supported the street gang enhancement is contrary to or an unreasonable application of United States Supreme Court law. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d

9

978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005). In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case. *Id.*

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985), *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

### 3. <u>Analysis</u>

Petitioner claims that the jury may have improperly relied on the "faulty predicate offense" involving Mr. Larsen to find the street gang enhancement to be true. He argues:

> It is impossible to determine that the jury rejected this faulty predicate offense. In fact, the record reasonably can be read to conclude that the jury may well have relied on the faulty predicate offense because the prosecution repeatedly emphasized this offense to the jury.

10

Pet. at 5D. This argument is unavailing. The California Court of Appeal agreed with petitioner that the jury most likely relied on all three alleged predicate offenses to support the street gang enhancement. The court concluded, however, that because the Kenny Hill offense and the instant offense qualified as the requisite two predicate offenses, sufficient evidence supported the enhancement.

Petitioner also claims that the offense involving Kenny Hill was not a proper predicate offense because there is no evidence it was committed in furtherance of a street gang. Traverse at 2, 6. He notes, in this regard, that when Hill was charged with mayhem on Orlandis Murray, it was not alleged or proven that the crime was committed in furtherance of a criminal street gang. *Id.* This argument also lacks merit. In its decision on petitioner's appeal, the California Court of Appeal explained that it was not necessary for the prosecution to prove that Kenny Hill's crime was gang-related in order to qualify as a predicate offense for the purpose of proving the street gang enhancement. This conclusion is based on a construction of state law that is not reviewable in the instant petition. *See Rivera v. Illinois*, ___ U.S. ___, 129 S.Ct. 1446, 1454 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n. 21 (1982) and *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)). *See also Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes"); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (deferring to state court on questions of state law in construing a state criminal statute). Accordingly, petitioner's assertion that the crime committed by Kenny Hill does not qualify as a predicate offense because it was not gang-related does not support his due process claim.

In his petition for review filed in the California Supreme Court, which is attached to the instant habeas petition, petitioner made the following argument:

> The prosecution presented insufficient evidence that one of the alleged predicate offenses took place on or before the charged crime, the court never instructed that the predicate offenses had to occur on or before the charged offense, and there was no indication that the jury based the true finding on the gang enhancement on the

11

> remaining two predicate offenses. The verdict must [be] set aside in such a case where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.

Pet., Ex. B at 2. However, the state appellate court concluded that petitioner's jury found *all three* assaults qualified as predicate offenses for the purpose of establishing the criminal gang enhancement. This conclusion is supported by the facts and record of this case. Petitioner's jurors were not instructed that they must find the Kenny Hill offense to be gang-related in order to qualify as a proper predicate offense. Therefore, there is no danger they excluded this offense from their determination for that reason or for any other reason. Indeed, petitioner can point to nothing in the record indicating that the jury excluded the Kenny Hill offense when determining whether the street gang enhancement had been proved. Under these circumstances, the California Court of Appeal reasonably concluded that petitioner's jury "found that the assaults on Jasmine, Murray and Larsen each qualified as a predicate offense for establishing a pattern of criminal gang activity." Opinion at 9-10. In assessing petitioner's claim, this court must review the evidence in the light most favorable to the prosecution. *See McDaniel v. Brown*, ___ S.Ct. ___, 2010 WL 58361, *7 (U.S. 2010) (a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution") (quoting *Jackson*, 443 U.S. at 326). Therefore, the court will assume that petitioner's jury accepted all three assaults as qualifying predicate offenses, as suggested by the state appellate court.

**III. Conclusion**

For the foregoing reasons, the decision of the California Court of Appeal that sufficient evidence supported the jury's true finding on the street gang enhancement is a reasonable construction of the evidence in this case and is not contrary to or an objectively unreasonable application of United States Supreme Court authority. *See Woodford v. Visciotti*, 537 U.S. 19,

25 (2002).  *See also* 28 U.S.C. § 2254(d)(1).  Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  February 9, 2010.

                */s/ Edmund F. Brennan*
                EDMUND F. BRENNAN
                UNITED STATES MAGISTRATE JUDGE